639 S.E.2d 839

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Jeffrey L. FINLEY, Defendant Below, Appellant.**

**No. 32961.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 6, 2006.

Decided Nov. 16, 2006.

Concurring and Dissenting Opinion of Chief Justice Davis Dec. 1, 2006.

Dissenting Opinion of Justice Maynard Dec. 4, 2006.

Concurring Opinion of Justice Benjamin Jan. 2, 2007.

Russell S. Cook, Jack L. Hickok, West Virginia Public Defender Services, Charleston, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Colleen A. Ford, Assistant Attorney General, Charleston, for the Appellee.

ALBRIGHT, Justice:

This case involves an appeal of Jeffrey Lee Finley (hereinafter referred to as "Appellant") of his sentence of life without mercy, imposed in the Circuit Court of Cabell County by order entered on October 28, 2004, as recommended by the jury which found Appellant guilty of the offense of first-degree murder.[1] While Appellant's petition for ap-

---

1. Appellant was also convicted of two counts of sexual assault in the second degree during the same proceeding.

peal assigned six errors committed by the trial court, this Court accepted the petition on the sole issue of whether it violates due process under the West Virginia and United States Constitutions to require a criminal defendant to wear jail or prison clothing during the penalty phase[2] of a bifurcated jury trial for murder. For the reasons set forth below, we reverse the judgment and remand the case only for rehearing of the penalty phase of the trial.

### I. Factual and Procedural Background

An indictment handed down by a Cabell County grand jury in May 2003 charged Appellant with one count of murder and two counts of second-degree sexual assault in the March 22, 1999, murder of Mabel Hetzer. The victim, the ninety-two year old neighbor of Appellant, was found dead in her home with her body exhibiting signs of sexual assault. The guilt phase of the jury trial on the charges began on September 20, 2004, and concluded on September 29, 2004, with the jury returning the verdict of guilty on all three charges in the indictment.

On October 12, 2004, the jury returned for the penalty phase of the trial for the sole purpose of deciding whether to recommend mercy for the life sentence resulting from their finding of guilt on the first-degree murder charge. Appellant had worn civilian clothes during the guilt phase of the bifurcated trial and moved the trial court to be permitted to do the same during the penalty phase. The motion to wear civilian clothes was denied by the trial court with the explanation that it was the practice "in Cabell County ... that once he's been convicted, this jury already knows that he is a convict, they're the ones that convicted him, that he comes over not in a suit, but in his regular jail clothes." Consequently, Appellant appeared before the jury during the penalty phase in the standard bright orange jail uniform. No evidence was presented by the defense or prosecution during this phase of the trial, so the jury was only presented with closing arguments of the parties and instructions before the panel began its deliberation. The jury's subsequent determination not to recommend mercy in sentencing for the murder conviction was followed by the trial court's immediate sentencing of Appellant to life imprisonment without possibility of parole.[3]

On December 17, 2005, the trial court denied Appellant's post-trial motions. Because the trial court granted a two-month extension to appeal, the criminal appeal alleging commission of various errors by the trial court was not filed in this Court until June 28, 2005. On January 9, 2006, this Court accepted the appeal for consideration of the solitary issue of whether it comports with constitutional guarantees of due process for a criminal defendant to be required to wear jail or prison clothing during the penalty phase of a bifurcated murder trial.

### II. Standard of Review

■ The issue in this case calls on us to examine a question of constitutional dimension and as such, "[w]here the issue on an appeal from the circuit court is clearly a question of law ... we apply a *de novo* standard of review." Syl. Pt. 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

### III. Discussion

■ Appellant argues that the lower court erred in denying his request to wear civilian clothing during the penalty phase of the trial

---

2. In a first-degree murder trial where bifurcation has been granted by the trial court, a jury is involved in both the guilt phase and the mercy or penalty phase of the trial. During the guilt phase, the jury determines the guilt or innocence of the accused. A finding of guilt by the jury automatically results in a life sentence, so during the mercy or penalty phase the jury's only discretion is whether to grant parole eligibility by recommending mercy. W.Va.Code § 62–3–15 (1994) (Repl. Vol. 2005); *State ex rel. Leach v. Hamilton*, 280 S.E.2d 62, 64 (1980). Although some jurisdictions, and even some opinions of this Court, refer to the mercy or penalty phase as the sentencing phase, we find it important to distinguish the segments of the trial in which the jury is involved, i.e. the guilt and penalty phases, from that portion of the criminal proceeding in which the trial court acts alone, i.e. the sentencing phase. Our discussion in this case focuses on the penalty or mercy phase of the murder trial.

3. Appellant was also sentenced to two consecutive sentences of ten to twenty-five years on each of the second-degree sexual assault convictions.

because the jury's duties were not entirely completed until after the panel decided the question of whether to grant mercy.[4] Appellant maintains that as long as a criminal defendant remains subject to a discretionary decision from the jury, the defendant should not be compelled by the trial judge to wear prison garb as it violates the due process guarantees of both federal and state constitutions by denying the accused a fair trial. In support of this due process argument, Appellant cites the United States Supreme Court case of *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), and the West Virginia case of *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 254 S.E.2d 805 (1979), in which this Court adopted the principles announced in *Estelle*. Appellant also directs us to the recent decision of *Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), in which the United States Supreme Court, relying on *Estelle* and its progeny, found that a defendant's appearance before a jury in visible shackles during the penalty phase of a homicide trial violates due process under the Fifth and Fourteenth Amendments to the United States Constitution.

Responding to this argument, the State contends that once the criminal defendant in a bifurcated murder trial is found guilty by the jury, safeguards of the presumption of the defendant's innocence are no longer needed. Thus, the State concludes that what clothing a criminal defendant wears during the penalty phase of such bifurcated trial does not raise an issue of constitutional magnitude but rather is left to the sound discretion of the trial court.

It was clearly established in *Estelle v. Williams* that it is unconstitutional to compel a criminal defendant to wear prison clothing during a criminal trial when the guilt or innocence of the accused is undecided. At the outset of its discussion in *Estelle*, the

Supreme Court observed that a fair trial is a fundamental constitutional right having as one of its key components the presumption of innocence. 425 U.S. at 503, 96 S.Ct. 1691. Recognizing the likelihood that readily identifiable prison clothing would impair the presumption of innocence in the eyes of a jury, the Supreme Court went on to say in *Estelle* that:

> Unlike physical restraints, permitted under [*Illinois v.*] *Allen*, [397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970),] ... compelling an accused to wear jail clothing furthers no essential state policy. That it may be more convenient for jail administrators, a factor quite unlike the substantial need to impose physical restraints upon contumacious defendants, provides no justification for the practice.

425 U.S. at 505, 96 S.Ct. 1691 (internal footnote omitted).

■ Analyzing the *Estelle* ruling, this Court in *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 254 S.E.2d 805 (1979), noted that *"Estelle* is bottomed on the defendant's constitutionally sanctioned presumption of innocence, across which prison attire can cast a substantial shadow, since the attire communicates a condition of guilt." *Id.* at 135, 254 S.E.2d at 808. We went on to hold in syllabus point two of *McMannis* that "[a] criminal defendant has the right under the Due Process Clause of our State and Federal Constitutions not to be forced to trial in identifiable prison attire." After so finding, we examined in *McMannis* whether the constitutional principle extended to witnesses for the defense. Again relying on the pivotal issue of presumption of innocence, this Court found that a defendant has no constitutional right to have his or her witnesses appear at trial in civilian clothing because "[t]he defendant's witnesses are not cloaked in his presumption of innocence, nor do they derive such shelter

---

4. Appellant also asserted in his brief that in addition to being forced to wear bright orange jail clothing, he also was required to wear leg restraints during the penalty phase of his trial. The record does not reveal whether Appellant was wearing such restraints nor does it reflect Appellant's objection to the same. Thus, we decline to address the issue since it was not properly preserved for appeal. Syl. pt. 3, *O'Neal v. Peake Operating Co.*, 185 W.Va. 28, 404 S.E.2d

420 (1991) (" 'Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal.' " (citation omitted)); Syl. pt. 2, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996) ("To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect.").

independently." *Id.* Similarly, the presumption of innocence was the reason why this Court found that criminal defendants in recidivist proceedings were afforded the same constitutional protections as any similarly situated defendant and could not be compelled to wear jail clothing. *State v. Reedy,* 177 W.Va. 406, 352 S.E.2d 158 (1986).

None of these cases—*Estelle, McMannis* or *Reedy*—specifically discussed the appearance of a criminal defendant in the context of a bifurcated proceeding. It was not until the May 23, 2005, decision of the U.S. Supreme Court in *Deck v. Missouri,* 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953, that the constitutionality of the forced appearance of a criminal defendant at the guilt phase versus the penalty phase of a bifurcated capital offense trial was definitively addressed, albeit in a different factual light than the case now pending. The Supreme Court concluded in *Deck* that the United States "Constitution forbids the use of visible shackles during the [capital trial's] penalty phase, as it forbids their use during the guilt phase, *unless* that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial." *Id.* at 624, 125 S.Ct. 2007 (emphasis in original; citation omitted).

As an initial step in its analysis in *Deck,* the Supreme Court identified the following three "reasons that motivate the guilt-phase constitutional rule": (1) the presumption of innocence and the related fairness of the fact-finding process; (2) the constitutional guarantee of the right to counsel; and (3) the obligation of judges to maintain a dignified judicial process which includes the respectful treatment of defendants. 544 U.S. at 630–631, 125 S.Ct. 2007.

Recognizing that the defendant's presumption of innocence is no longer an issue at the penalty phase of a capital trial, the court in *Deck* reasoned that

> [t]he appearance of the offender during the penalty phase in shackles ... almost inevitably implies to a jury, as a matter of common sense, that court authorities consider the offender a danger to the community—often a statutory aggravator and nearly always a relevant factor in jury decisionmaking.... It also almost inevitably affects adversely the jury's perception of the character of the defendant. And it thereby inevitably undermines the jury's ability to weigh accurately all relevant considerations ... when it determines whether a defendant deserves death.

*Id.* at 633, 125 S.Ct. 2007 (internal citations omitted). Consequently, the court found that even though the right to the presumption of innocence no longer existed at the penalty phase, the other fundamental legal principles bearing on fairness of securing a meaningful defense and maintaining dignified judicial proceedings "that militate against the routine use of visible shackles during the guilt phase of a criminal trial apply with like force to penalty proceedings in capital cases .... Although the jury is no longer deciding between guilt and innocence, it is deciding between life and death .... [a] decision [that] is no less important than the decision about guilt." *Id.* at 632, 125 S.Ct. 2007.

Appellant asserts that the forced wearing of jail clothing is analogous to the forced shackling addressed in *Deck* because the readily identifiable orange uniforms provided residents of regional jails convey the same messages as the shackles Mr. Deck was required to wear. More specifically, Appellant maintains that the jury could not fairly decide the mercy issue when a defendant is forced to wear a jail uniform during the penalty phase since the jail clothing constantly sends the message to the jury that the person wearing the outfit is in custody because he is a dangerous person and the mere sight of someone wearing a prison uniform implies a dangerous character.

The issue of whether criminal defendants are deprived a fair trial when they are required to wear jail or prison clothing during the penalty phase of a murder trial is a matter of first impression for this Court. As a matter of fact, our research reveals that no other court has addressed the issue since *Deck* was decided. The only case decided after *Deck* we have located which even raises the precise issue now before us is *Ochoa v. State of Oklahoma,* 136 P.3d 661 (Okla.Cr. App.2006). In *Ochoa,* the Court of Criminal Appeals of Oklahoma was presented with the argument that *Deck* extended constitutional protection against compelling the wearing of

prison clothes at the penalty phase of a murder trial. However, the Oklahoma appellate court, sidestepping any discussion of *Deck,* concluded that the defendant had waived his right under *Estelle v. Williams* by failing to request to wear civilian clothes.

The State directs our attention to two cases [5], decided before *Deck,* in which it was determined that compelling the wearing of prison clothes during the penalty phase of a trial did not violate due process. We do not find these cases particularly enlightening since they concur with the conclusion in *Deck,* that the presumption of innocence no longer has vitality during the penalty phase of a bifurcated trial. The other two concerns discussed by the Supreme Court in *Deck* involving a fair trial, securing a meaningful defense and maintaining dignified judicial proceedings, are not addressed in these cases.

In examining these two remaining concerns in the context of compelled appearance in jail or prison clothing during the penalty phase, we find no discernable difference in the prejudicial effect upon a jury of seeing a person in prison garb versus seeing that person in shackles in light of the decision the jury is obliged to make at this portion of the trial. At the penalty phase, the jury is no longer looking narrowly at the circumstances surrounding the charged offense. In order to make a recommendation regarding mercy, the jury is bound to look at the broader picture of the defendant's character—examining the defendant's past, present and future according to the evidence before it—in order to reach its decision regarding whether the defendant is a person who is worthy of the chance to regain freedom. *See Zant v. Stephens,* 462 U.S. 862, 900, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (Rehnquist, J., concurring in judgment) (at the penalty stage a jury considers the character and propensities of a defendant in order to make a "unique, individualized judgment regarding the punishment that a particular person deserves.") The jury must be as impartial in reaching this decision as it was in reaching the conviction decision. Courts bear the burden of ensuring that necessary steps be taken to maintain the dignity and neutrality of the penalty phase proceedings, like any other proceedings, in order to provide a fair trial within the constitutional guarantee of due process. As recognized in *Deck,* elusive and unquantifiable considerations must be minimized throughout a murder trial, at both guilt and penalty phases. While the court in *Deck* decided that the compelled use of visible shackles at the penalty phase impugns the integrity of the proceedings and manifests a violation of due process because the practice essentially puts a thumb on one side of the scale, we find the same degree of unfairness results when a criminal defendant is forced to wear jail or prison clothing during the penalty phase of a bifurcated murder trial. It matters not as far as this analysis goes that the *Deck* case involved a decision regarding the death penalty because the parallel degree of punishment which may be levied for the same crime in West Virginia is life without mercy. Accordingly we hold that the due process afforded by the West Virginia and United States Constitutions [6] demands that a criminal defendant may not routinely be compelled to appear in jail or prison clothing at the penalty phase of a bifurcated murder trial. We also adhere to the conclusion reached in *Deck* that the constitutional requirement is not absolute in that "[i]t permits a judge, in the exercise of his or her discretion, to take account of special circumstances, including security concerns." 544 U.S. at 633, 125 S.Ct. 2007. We have adopted the same view regarding the use of restraints at trial. *State v. Youngblood,* 217 W.Va. 535, 544, 618 S.E.2d 544, 553 (2005) (discussing and citing case examples). Thus we find that the decision regarding whether a criminal defendant be required to wear identifiable prison or jail clothing at the penalty phase of a bifurcated murder trial is within the sound discretion of the trial court, subject to an evidentiary hearing that establishes an essential state interest which justifies imposing the requirement.

---

5. *Duckett v. Godinez,* 67 F.3d 734 (9th Cir.1995); *People v. Bradford,* 15 Cal.4th 1229, 65 Cal. Rptr.2d 145, 939 P.2d 259 (1997).

6. *See* W.Va. Const. Article III § 10; U.S. Const. amend. V.

Appellant also asserts that in the event we find that the penalty phase was fatally flawed, the only proper remedy is a new trial and not simply a remand for retrial of the mercy determination. Appellant bases this assertion on the wording of West Virginia Code § 62–3–15 (1994) (Repl. Vol. 2005), that provides "if the jury find in their verdict that ... [the accused] is guilty of murder in the first degree ... the jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole[.]". Essentially, Appellant maintains that the language used in this statute mandates that the same jury which determines the issue of guilt must also be the jury that decides the issue of mercy. While there is no question that a single jury panel generally determines both guilt and mercy matters, this Court has on a previous occasion found that where the error on appeal of a bifurcated proceeding does not affect "the finding of guilt ... [then] it would be a waste of judicial resources to require an entirely new trial, rather than to require a limited trial on the recommendation of mercy." *State v. Doman*, 204 W.Va. 289, 292, 512 S.E.2d 211, 214 (1998). Accordingly, the judgment of the lower court finding the Appellant guilty of first-degree murder is affirmed, but the judgment regarding the jury's penalty phase recommendation is reversed. Upon remand, the court shall empanel a jury for trial of the sole issue of whether mercy is to be recommended for the sentencing of Appellant. Since the jury would not have information regarding the guilt phase of the trial, the lower court should exercise reasonable discretion in determining how the circumstances of the commission of the crime are to be conveyed to the jury in addition to other evidentiary matters appropriate to the mercy phase that the parties may adduce.

## IV. Conclusion

For the reasons discussed above, the judgment of the Circuit Court of Cabell County is reversed, and this case is remanded for retrial of the penalty phase by a jury to address the sole question of whether Appellant should receive a recommendation of mercy.

Affirmed, in part, Reversed, in part, and Remanded.

DAVIS, Chief Justice, concurring, in part, and dissenting, in part:

(Filed Dec. 1, 2006)

In this proceeding, the defendant was convicted of murder and sentenced to life in prison without the possibility of parole. The majority opinion has affirmed the defendant's conviction. With respect to this aspect of the majority opinion, I concur. However, because the defendant was required to wear jail clothing during the sentencing hearing, the majority opinion has reversed the defendant's sentence and has remanded the case for a new sentencing hearing. I believe the defendant was properly sentenced, and therefore, for the reasons set out below, I respectfully dissent from the majority's decision to reverse the sentence.

*The Federal and State Constitutions Are Not Violated Because a Defendant Is Required to Wear Jail Clothing During the Sentencing Phase of a Prosecution*

The victim in this case was a 92–year–old woman who "had been beaten, raped-both anally and vaginally-forced to drink a caustic liquid, had her back broken, and was manually strangled" by the defendant. During the guilt phase of the bifurcated trial, the jury convicted the defendant of first degree murder and other crimes. When the penalty phase of the trial began, the defendant, for the first time, was brought into the courtroom wearing jail clothing. The penalty phase jury, after hearing evidence for and against granting mercy, declined to grant the defendant mercy. Consequently, for the murder conviction, the defendant was sentenced by the trial court to life without mercy. The majority opinion has reversed the sentence on the grounds that the "[d]ue process afforded by the West Virginia and United States Constitutions demands that a criminal defendant may not routinely be compelled to appear in jail or prison clothing at the penalty phase of a bifurcated murder trial." Syl. pt. 3. The majority reached this result based upon its interpretation of *Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). Simply put, *Deck* has no application to this case.

The decision in *Deck* involved a defendant who was convicted by a Missouri jury of capital murder. During the penalty phase the defendant was shackled in leg irons, handcuffs and a belly chain. The jury ultimately sentenced the defendant to death. The case reached the United States Supreme Court on the issue of whether the United States Constitution prohibited the routine use of visible physical restraints during the penalty phase of a death penalty prosecution. The Court found that the Constitution did, in fact, bar routine use of visible physical restraints during the penalty phase of a capital prosecution. The Court justified its decision as follows:

> The appearance of the offender during the penalty phase in shackles, however, almost inevitably implies to a jury, as a matter of common sense, that court authorities consider the offender a danger to the community-often a statutory aggravator and nearly always a relevant factor in jury decisionmaking, even where the State does not specifically argue the point. It also almost inevitably affects adversely the jury's perception of the character of the defendant. And it thereby inevitably undermines the jury's ability to weigh accurately all relevant considerations-considerations that are often unquantifiable and elusive-when it determines whether a defendant deserves death.

*Deck*, 544 U.S. at 633, 125 S.Ct. at 2014, 161 L.Ed.2d at 965 (internal citations omitted).

*Deck's* prohibition against routine use of visible physical restraints during a death penalty sentencing phase is clearly distinguishable from the facts of the instant case. During the death penalty sentencing phase, the jury is asked to decide whether a defendant should be executed or remain in prison for life. Obviously, if the jury sees the defendant sitting in court wearing leg irons, handcuffs and a belly chain, there is a possibility that they would conclude that the defendant is too dangerous to even be in prison. *Deck* recognized this prejudicial possibility. It therefore found that, in the absence of a justified need, a capital defendant may not be compelled to wear visible physical restraints during the sentencing phase.

In the instant case, the issue before the jury was not whether the defendant should be sentenced to death or life imprisonment. West Virginia does not have the death penalty. Instead, the jury was asked to decide whether the defendant should be sentenced to prison with, or without, the possibility of parole. Additionally, the issue in the instant case does not involve wearing leg irons, handcuffs or a belly chain. In this case the defendant complained about having to wear jail clothing in front of the sentencing jury. I am unable to conclude that any measurable prejudice resulted from wearing jail clothing under these circumstances. Several courts have addressed this issue and have reached the same conclusion that I have reached.

For example, in *Morales v. State*, No. 08–98–00323–CR, 2000 WL 1513924 (Tex.App. Oct. 12, 2000) the defendant was convicted of aggravated sexual assault. A separate sentencing hearing was held before the jury that convicted the defendant. During the sentencing phase the defendant was required to wear jail clothing. The defendant's counsel objected to the appearance of the defendant in jail attire. The trial court overruled the objection. The jury sentenced the defendant to 10 years in prison but suspended the sentence and placed the defendant on probation. In his appeal, the defendant argued that he was prejudiced by having to wear jail attire during the sentencing phase. The appellate court disagreed as follows:

> [W]e cannot find any apparent reason for presuming harm when the defendant is tried in jail-issue clothing during the punishment phase of trial. Generally, a defendant's right to a fair trial and his right to be presumed innocent are violated when he is compelled to appear before the jury in jail-issue clothing. This rationale is certainly applicable during the guilt-innocence phase, but we conclude that it is not applicable during the punishment phase. Once the defendant has been found guilty, the presumption of innocence no longer applies. Thus, Appellant's right to be presumed innocent was not violated when the trial court refused his request for a recess so that he could find civilian clothing.

*Morales*, 2000 WL 1513924, at *8 (internal citations omitted).

Similarly, in *People v. Bradford*, 15 Cal.4th 1229, 65 Cal.Rptr.2d 145, 939 P.2d 259 (1997), a jury convicted the defendant of two capital murders. During the penalty phase the defendant wore jail attire. The trial court asked the defendant if he wanted to wear civilian clothing. The defendant stated that his clothing had been stolen, but that he had no objections to wearing jail clothing during the penalty phase. The jury sentenced the defendant to death. On appeal, the defendant argued that he was prejudiced by having to wear jail clothing during the penalty phase. The appellate court rejected the argument as follows:

> As explained above, the rule that a defendant may not be compelled to attend trial in jail or prison garb is premised upon the notion that doing so might subvert the presumption that an accused is innocent until proved guilty. In the present case, defendant's guilt of both murders already had been determined at the guilt phase of the trial, and at the time defendant appeared in county jail clothing, the jury was confronted with the remaining issue of the appropriate penalty. Because the presumption of innocence already had been rebutted and defendant had been found guilty beyond a reasonable doubt, there was no reasonable possibility that the jury would base its penalty decision on the factor of defendant's attire.

*Bradford*, 15 Cal.4th at 1363, 65 Cal.Rptr.2d at 224, 939 P.2d at 338 (citations omitted).

Furthermore, in *Duckett v. Godinez*, 67 F.3d 734 (9th Cir.1995), a Nevada jury convicted the defendant of two murders. During the penalty phase the defendant was required to wear jail clothing and visible shackles. The penalty phase jury sentenced the defendant to life without the possibility of parole. After the judgment was affirmed on direct appeal, the defendant filed a federal habeas corpus petition. In that petition the defendant alleged that the jury may have sentenced him to life with the possibility of parole if he had not been forced to wear jail clothing and visible shackles during the penalty phase. The federal district judge rejected the argument. The United States Court of Appeals for the Ninth Circuit found that it was error to require the defendant to wear visible shackles during the penalty phase.

However, the Court of Appeals found that no error occurred by requiring the defendant to wear jail clothing. The opinion addressed the issue as follows:

> It is clear that a court cannot, without violating the Due Process Clause, compel an accused to wear identifiable prison clothing during his trial. This is because the practice furthers no essential state interest, and the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment and impair the presumption of innocence, which is a basic component of a fair trial under our system of criminal justice.
>
> The presumption of innocence, however, no longer applies in the penalty phase of a bifurcated trial. At the penalty phase, the defendant stands convicted. His condition as a prisoner is no surprise to the jury, which just found him guilty. Prison clothing cannot be considered inherently prejudicial when the jury already knows, based upon other facts, that the defendant has been deprived of his liberty.
>
> We conclude the fact [defendant] was compelled to wear prison clothing at his sentencing hearing could not have undermined the fairness of that proceeding, because the jury already knew-based on the trial in which it had participated and the verdict it had rendered-[defendant] was a convicted murderer.

*Duckett*, 67 F.3d at 747 (internal quotations and citations omitted).

All courts that have addressed the issue have concluded that no prejudice results from requiring a defendant to wear jail clothing during a separate sentencing proceeding. The majority opinion makes our Court the only court the nation that believes a defendant is prejudiced by wearing jail clothing during the sentencing phase. As a result of the majority opinion, I am compelled to agree with a recent commentary which stated that "[t]his is the kind of [decision] that makes courts look silly." Editorial, *Clothes Do Not Make the Man: The State Supreme Court Went Overboard in a Murder Case*, Charleston Daily Mail, Nov. 27, 2006, at 4A. This observation is all the more telling considering the fact that the 92–year–old victim

in this case was beaten, raped anally and vaginally, forced to drink a caustic liquid, had her back broken, and was strangled. Under this set of facts, it is totally unreasonable to conclude that the jury did not grant the defendant mercy because he was wearing jail clothing.

In view of the foregoing, I concur, in part, and dissent, in part. I am authorized to state that Justice MAYNARD joins me in this separate opinion.

### MAYNARD, Justice, dissenting:
(Filed Dec. 4, 2006)

The majority opinion in this case has absolutely no basis in law, reason, or common sense, and it unnecessarily reverses the sentence of life without mercy of an appellant who brutally beat, terrorized, tortured, raped, and strangled a 92–year–old woman.

The jurors below heard evidence that the appellant entered the little house in West Huntington where 92–year–old Mabel Hetzer had lived her entire life. They heard evidence that the appellant beat Ms. Hetzer. They heard evidence that the appellant raped Ms. Hetzer—both anally and vaginally. They heard evidence that the appellant broke Ms. Hetzer's back. They heard evidence that the appellant forced Ms. Hetzer to drink rubbing alcohol. And they heard evidence that the appellant manually strangled Ms. Hetzer. The jurors heard evidence that, after two friends from Ms. Hetzer's church became concerned when they could not reach her by telephone, Ms. Hetzer's lifeless, bruised, violated, tortured, mangled, broken body was found lying in that little house where she had always lived. After hearing all of this evidence, the jurors found the appellant guilty of two counts of sexual assault in the second degree and murder in the first degree. Subsequently, at the bifurcated penalty phase of the trial, the same jurors who heard all of the evidence above decided, not surprisingly, to refuse mercy to the appellant.

The majority finds that the jury's decision to refuse mercy to the appellant was improperly influenced by the fact that the appellant was required to wear a jail uniform during the penalty phase of his trial. The majority bases its finding on the U.S. Supreme Court case of *Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), where that Court ruled that the Constitution forbids the appearance of the offender in shackles during the penalty phase unless the use of shackles is justified by an essential state interest. The majority concludes that there is no discernible difference in the prejudicial effect upon a jury of seeing a person in prison garb versus seeing that person in shackles. This conclusion is ridiculous.

The use of shackles informs the jury that an offender is so dangerous and prone to violence that he or she must be restrained in order to ensure the safety of everyone in the courtroom. Because the offender's danger to the community is a relevant factor in determining whether or not he or she should receive mercy, one can see how the use of shackles may adversely affect the jury's perception of an offender.

In contrast, the appellant's wearing of jail clothing communicated to the jurors the one thing that they already knew—the appellant is an incarcerated convict. The jurors already knew this because they convicted the appellant of two counts of sexual assault and one count of first degree murder. As a result, there is no possibility that the appellant's attire during the penalty phase of trial could have in any way adversely affected the jury's perception of him. The fact is the jury's perception of the appellant had already been sufficiently adversely affected by the fact that he brutally beat, terrorized, tortured, raped, and strangled a 92–year–old woman. Thus, the appellant's clothing during the penalty phase was irrelevant to the jury's refusal to grant mercy. Doubtless, the appellant could have appeared in court wearing an Armani suit and Italian leather shoes and the jury's decision would have been the same.

In sum, the jurors below refused mercy to the appellant because he committed unspeakably evil acts and not because of what he wore during the penalty phase of his trial. Any claim to the contrary is wholly unsupportable.

Accordingly, even though I joined Chief Justice Davis's separate opinion, for the reasons set forth above, I also file this dissenting opinion.

BENJAMIN, Justice, concurring:

(Filed January 2, 2007)

Why in the world would the Supreme Court of Appeals of West Virginia ever accept this case for review? After all, Jeffrey Lee Finley is a convicted murderer. What he did to Mabel Hetzer on March 22, 1999, is almost beyond imagination. Not only did he kill Ms. Hetzer, he brutalized her and sexually assaulted her. He broke her back. He strangled her.

"Jeffrey Lee Finley does not deserve the rights which our society bestows on its citizens. Indeed, Jeffrey Lee Finley is such a bad person, there would be no harm if the State ignored the law and quietly tipped the scales of justice against Jeffrey Lee Finley and 'helped' the jury to 'do the right thing.' " These sentiments, no doubt held by many, may also be stated as: "Bad people don't deserve the rights which law-abiding citizens have." Primary to such a statement is the belief that the rights to which a person is entitled may be determined by considerations of popular sentiment or political convenience. In other words, rights are conditional and dependent on what the State or some other arbiter believes they should be. It is an unfortunate truism that many people today believe the statements above to be accurate. Whether that means advocating for censorship of the press when someone doesn't like what is written, arbitrary restrictions on gun ownership by law-abiding citizens, or feeling that bad people like Jeffrey Lee Finley don't deserve any constitutional rights, the slippery slope of limiting individual and constitutional rights based on current notions of popularity and emotion is a tempting siren. We forget too easily that constitutional rights were preserved for the popular as well as the unpopular, the wealthy as well as the poor, and the good as well as the bad.

The establishment of Jeffrey Lee Finley's rights during the sentencing phase of his trial were set forth by the United States Supreme Court in *Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). I must disagree with my dissenting colleagues that *Deck* is not applicable herein. It is. As the majority decision explains, limitations on the State's presentation before a jury of a criminal defendant were considered by the United States Supreme Court in *Deck* both at the guilt and the penalty phases of the defendant's trial. Such limitations are subject to exceptions as "justified by an essential state interest." *Id.*, at 624, 125 S.Ct. 2007. What possibly the state's interest was in the use of prison garb in the sentencing phase of Jeffrey Lee Finley's trial is uncertain—though its affect is certainly palpable.

Here, the jury needed no "help" from the State in doing what it needed to do. Our system of criminal jurisprudence is unique in putting the determination of whether an individual will be incarcerated in the penitentiary in the hands of a jury of peers, not in the hands of the State. Furthermore, it is the jury which decides between mercy or no mercy. The dissenters argue that prison garb conveys to the jury nothing more than what the jury already knows—that the defendant is a "convicted" defendant. The dissenters attempt to distinguish the rationale of *Deck* by claiming that shackles would have a different effect on the jury because such restraints would convey to the jury that the defendant was dangerous. That argument simply is not credible. The dissenters go to considerable lengths to identify the many bad acts of Jeffrey Lee Finley. The jury which convicted Jeffrey Lee Finley was acutely and personally aware of each such act—much more graphically than can any reader of the record herein. How the dissenters believe that the same jury which convicted Jeffrey Lee Finley of such horrendous acts could not appreciate him as dangerous absent shackles is beyond credulity.

The difference here is the mandate of a dignified judicial process required by *Deck*. The sad fact is that the jury needed no subtle help from the State to do the job entrusted by our system to it and specifically kept from the State.[1] By improperly involving itself in the province left exclusively to the jury, the State committed error. Jeffrey Lee Finley is entitled to a new sentencing phase, but not a new trial on guilt.

1. Although the dissenters also reference certain cases in an attempt to bolster their arguments, I note that all such cases predate the United States Supreme Court's pronouncement in *Deck* and none are cases decided by the United Supreme Court.

Why should the Supreme Court of Appeals of West Virginia take a case like this? Because we must. The public must be able to take the Court's impartiality and dedication to the rule of law and the protection of the People's rights as a certainty, even when it might be easier or more popular for the Court to simply ignore the error. We ought to be judges, not politicians. As judges, we must choose the path which safeguards all of our protections and breathes vitality into our rights. When we uphold the law on an issue such as that before us, despite public sentiment to go with a more palatable result, we are not siding with the criminal, we are protecting the system from the excesses of the State. Justice is not a rush to judgment. We do justice when we support, protect, defend and enforce the federal and state constitutions and the rule of law—as difficult as that sometimes may be. I concur in the majority decision.