# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**John Rodney Johnson,**
**Petitioner Below, Petitioner**

**vs)  No. 17-0843** (Cabell County 17-C-305)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**February 22, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner John Rodney Johnson, pro se, appeals the August 24, 2017, order of the Circuit Court of Cabell County denying his petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex,[1] by counsel Robert L. Hogan, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 3, 2003, Thomas Drake was shot and killed outside of a bar in Huntington. In May of 2003, a Cabell County grand jury indicted petitioner for murder. In March of 2004, petitioner received a jury trial which was bifurcated into guilt and penalty phases. On March 12, 2004, the jury found petitioner guilty of first-degree murder. On March 16, 2004, the jury did not make a recommendation of mercy. Accordingly, the circuit court sentenced petitioner to a life term of incarceration without the possibility of parole. This Court refused petitioner's direct appeal on March 2, 2006.

---

[1]Since the filing of the appeal in this case, the superintendent at Mount Olive Correctional Complex has changed and the superintendent is now Donnie Ames. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure. Additionally, effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W.Va. Code § 15A-5-3.

1

In August of 2007, petitioner filed a petition for a writ of habeas corpus, and he was subsequently appointed counsel. In January of 2009, petitioner's habeas attorney filed an amended petition with petitioner's initial petition and a "renewed" pro se petition attached as addendums. The circuit court held evidentiary hearings on March 16, 2010, and June 9, 2010. At the March 16, 2010, hearing, petitioner's habeas attorney presented three witnesses including petitioner's trial counsel. At the June 9, 2010, hearing, petitioner's habeas attorney presented two additional witnesses and made motions requesting that discovery be allowed, the record be expanded, and an expert be retained to review the surveillance footage from the bar. At the conclusion of the hearing, the circuit court denied those motions and denied petitioner's habeas petition, finding that petitioner did not carry "his burden in this matter."

Petitioner appealed the circuit court's February 21, 2013, order denying habeas relief in *Johnson v. Ballard*, No. 13-0292, 2014 WL 901706 (W.Va. March 7, 2014) (memorandum decision).[2] In petitioner's appellate brief, his appellate attorney raised several issues, including ineffective assistance of trial counsel, and also informed this Court of other issues that petitioner wanted to raise "pro se." In *Johnson*, this Court affirmed the denial of habeas relief, rejecting petitioner's claims including his allegation that trial counsel provided ineffective assistance. 2014 WL 901706, at *2-5. The Court further found that the circuit court adequately addressed "petitioner's pro se contentions" and "determined that petitioner expressly waived certain grounds on the *Losh* list."[3] *Id.* at *5.

On May 19, 2017, petitioner filed a second habeas petition, re-raising the grounds for relief from his first habeas proceeding and alleging that his habeas attorney and his habeas appellate attorney provided ineffective assistance. By order entered August 24, 2017, the circuit court denied the petition. The circuit court found that the doctrine of res judicata barred petitioner from re-raising the grounds for relief from his first habeas proceeding and that neither petitioner's habeas attorney nor his habeas appellate attorney provided ineffective assistance.

Petitioner now appeals the circuit court's August 24, 2017, order denying habeas relief. We apply the following standard of review in habeas appeals:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of

---

[2]We take judicial notice of the appellate record in *Johnson*.

[3]In *Losh v. McKenzie*, 166 W.Va. 762, 768-70, 277 S.E.2d 606, 611-12 (1981), we compiled a non-exclusive list of potential grounds that a circuit court should address with a habeas petitioner as to whether each ground was being either waived or raised in the proceeding.

law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Anstey v. Ballard*, 237 W.Va. 411, 787 S.E.2d 864 (2016).

On appeal, petitioner argues that the doctrine of res judicata does not bar him from raising any of his claims from his first habeas proceeding. Respondent counters that petitioner may only raise ineffective assistance of habeas counsel as an exception to the doctrine of res judicata, but also concedes that two other issues were "not actually" addressed in the prior proceeding. In syllabus points two and four of *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981), we held:

> 2.      A judgment denying relief in post-conviction habeas corpus is *res judicata* on questions of fact or law which have been fully and finally litigated and decided, and as to issues which with reasonable diligence should have been known but were not raised, and this occurs where there has been an omnibus habeas corpus hearing at which the applicant for habeas corpus was represented by counsel or appeared pro se having knowingly and intelligently waived his right to counsel.
>
> ****
>
> 4.      A prior omnibus habeas corpus hearing is *res judicata* as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing[.]

Here, petitioner does not dispute that he received appointment of habeas counsel and two evidentiary hearings in the prior proceeding. Accordingly, we find that the doctrine of res judicata generally bars petitioner from re-raising the grounds for relief from his first proceeding. Respondent states that petitioner's claims that the jury venire was not drawn from a fair cross-section of the community and that petitioner was made to wear prison attire during the penalty phase of his trial were "not actually" addressed in the prior proceeding. Thus, we find that confusion exists as to whether petitioner intended those pro se grounds to be considered by the habeas court. Therefore, based on our review of the record, we conclude that, in addition to ineffective assistance of habeas counsel, petitioner may raise (1) whether the jury venire was not drawn from a fair cross-section of the community; and (2) whether petitioner was made to wear prison attire during the penalty phase of his trial. However, unlike respondent, we assume *arguendo* that petitioner's claim (2) includes the allegation that the circuit court also erred in ordering that he be handcuffed and shackled during the penalty phase.[4] We address these issues first and then address petitioner's claim of ineffective assistance of habeas counsel.

---

[4]On appeal, petitioner challenges the wearing of prison attire and the use of restraints, both of which implicate similar concerns. *See State v. Finley*, 219 W.Va. 747, 752, 639 S.E.2d 839, 844 (2006). However, respondent states that petitioner challenged only the wearing of prison attire in (continued . . .)

<u>There is no merit to petitioner's contention that
the jury venire was not drawn from a fair cross-section of the community.</u>

Petitioner is African-American, and respondent does not dispute that only one of the twenty-six people on the jury venire was African-American. In *State v. Flack*, 232 W.Va. 708, 714-15, 753 S.E.2d 761, 767-68 (2013), we found that in order for a defendant

> [t]o establish a prima facie case of unconstitutional jury selection methods under the Sixth Amendment's fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

(quoting Syl. Pt. 2, *State v. Hobbs*, 168 W.Va. 13, 282 S.E.2d 258 (1981)).

Here, there is no dispute that African-Americans comprise a "distinctive" group in the community. As in *Flack*, *see id.* at 715, 753 S.E.2d at 768, we find that no evidence exists in the record to support any findings regarding the second or third requirements. "Most important, there is no evidence that any under-representation was due to systematic exclusion of African[-]Americans in the jury selection process." *Id.* Therefore, we conclude that this issue lacks merit.

<u>There is no merit to petitioner's contention that he was handcuffed, shackled,
and made to wear prison attire during the penalty phase of his trial without cause.</u>

Following the rendering of the jury's verdict in the guilt phase of the trial, the transcript reflects that petitioner stood up unexpectedly given that the circuit court instructed him to "[s]it down." The circuit court also directed that petitioner be handcuffed. The circuit court proceeded to finish polling the jurors to ensure the verdict was unanimous and, at the State's request, instructed the jury to return to the jury room to deliberate as to whether petitioner used a firearm. The jury subsequently returned with a finding that a firearm was used. The circuit court again polled the jurors to ensure that their finding was unanimous. The circuit court then informed the jury that they were to return the following Tuesday for the penalty phase of the trial. At that point, the transcript reflects that:

> . . . [Petitioner] began to scream and hit counsel table with his handcuffed hands.
>
> THE COURT: . . . and I am going to excuse the jury.
> [Petitioner]: I didn't do it.

---

his first habeas proceeding.

THE COURT: You all may be excused. You all may be excused. Thank you.

[Petitioner]: He attacked me. He attacked me. He attacked me.

THE BAILIFF: Everybody else remain seated, please.

**WHEREUPON** [petitioner], in custody of several officers, continued to scream and[,] while being escorted through the door entering the [c]ourt's chambers[,] broke a window in the secretary's office with his head.

At an in-chambers conference prior to the start of the penalty phase, the circuit court informed petitioner that it had entered an order on March 15, 2004, that he would be handcuffed and shackled during the proceeding "in order to keep him from hurting himself and/or others or to cause damage to property" due to "the disruption caused by [petitioner]" at the conclusion of the guilt phase of the trial. Petitioner's trial attorney noted his objection to petitioner being handcuffed and shackled.

Though the record clearly establishes that petitioner was handcuffed and shackled during the penalty phase, respondent argues that the record fails to reflect that petitioner was made to wear prison attire. *But see State v. Finley*, 219 W.Va. 747, 749, 639 S.E.2d 839, 841 (2006) (noting that the Cabell County practice was for a defendant appearing at a penalty phase of a trial to come in prison attire). Assuming *arguendo* that petitioner was required to wear prison attire, we find that the same reasons that caused the circuit court to order petitioner handcuffed and shackled also justified requiring him to wear prison garb during the penalty phase.

In *Finley*, we found that "security concerns" may serve as a basis for the requirement that a defendant wear prison attire. *Id.* at 752, 639 S.E.2d at 844 (quoting *Deck v. Missouri*, 544 U.S. 622, 633 (2005)). "We have adopted the same view regarding the use of restraints at trial." *Id.*; *see* Syl. Pt. 3, *State v. Brewster*, 164 W.Va. 173, 261 S.E.2d 77 (1979) (holding that "[a] criminal defendant has the right, *absent some necessity relating to courtroom security or order*, to be tried free of physical restraints") (Emphasis added.) In syllabus four of *Finley*, we held that a hearing must be held to establish the justification for requiring the defendant to wear prison attire. 219 W.Va. at 748, 639 S.E.2d at 840; *see also Brewster*, 164 W.Va. at 183, 261 S.E.2d at 83 (remanding case for a hearing as to whether handcuffing the defendant was warranted). Here, we agree with respondent's position that a hearing on this matter was not necessary under the facts and circumstances of this case. As already noted, the trial transcript clearly established that petitioner (1) had to be told to sit down following the jury's verdict; (2) subsequently began to scream and hit the counsel's table; (3) had to be escorted from the courtroom by "several officers"; and (4) continued to scream and "broke a window in the secretary's office with his head." Therefore, we conclude that this issue lacks merit.

There is no merit to petitioner's contention that
his habeas attorney and his habeas appellate attorney provided ineffective assistance.

We find that the crux of petitioner's ineffective assistance claims is that his habeas attorney and his habeas appellate attorney failed to adequately consult with him in the prior proceeding. In syllabus points five and six of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), we held:

> 5.      In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

> 6.      In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Here, at the March 16, 2010, hearing, habeas counsel consulted with petitioner a total of eight times in presenting three witnesses and in informing the circuit court that petitioner was undecided as to whether to testify himself. At the June 9, 2010, hearing, petitioner's habeas attorney informed the circuit court that petitioner was not going to testify, but presented an additional two witnesses on his behalf. Also, habeas counsel made three motions requesting that discovery be allowed, the record be expanded, and an expert be retained to review the surveillance footage from the bar. Counsel explained that petitioner believed "that the record need[ed] to be expanded." Therefore, we find that, if petitioner wanted other matters raised and/or additional motions made at either hearing, habeas counsel was willing to follow his client's directives. Accordingly, based on our review of the record, we find that petitioner's habeas attorney acted as a reasonable lawyer would and did not provide ineffective assistance.

Regarding petitioner's habeas appellate attorney, petitioner argues that counsel never met him in person. However, petitioner has submitted a June 6, 2013, letter from his habeas appellate attorney, in which the attorney gave him an update on his case "[s]ince our last meeting."[5] Petitioner acknowledges that he was able to give habeas appellate counsel a copy of his pro se habeas petition. This is corroborated by the attorney's attachment of petitioner's pro se petition to the appellate brief. Petitioner's habeas appellate attorney informed this Court that petitioner wanted to raise those issues "pro se." Therefore, we concur with the circuit court's finding that the

---

[5]We note that the record is conflicting as to whether petitioner's habeas appellate attorney consulted with him in person. Petitioner points to his visitation records from Mt. Olive Correctional Complex indicating that habeas appellate counsel never visited him. However, we find that these records are not conclusive because prisoners are sometimes transferred between facilities.

fact that petitioner may not have seen the appellate brief prior to its filing did not constitute deficient performance. As habeas appellate counsel informed petitioner in a July 12, 2013, letter, it is a matter of strategy "to make sure that the most important arguments get the most attention." Therefore, based on our review of the record, we find that petitioner's habeas appellate attorney acted as a reasonable lawyer would and did not provide ineffective assistance. Accordingly, we conclude that the circuit court did not abuse its discretion in denying petitioner's habeas petition.

For the foregoing reasons, we affirm the circuit court's August 24, 2017, order denying petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED**:   February 22, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison