# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Kilton Lee Kitchen,**
**Petitioner Below, Petitioner**

**FILED**

**May 20, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 15-0463** (Hampshire County 11-C-97)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kilton Lee Kitchen, by counsel Jonie E. Nelson, appeals the Circuit Court of Hampshire County's order denying his petition for a writ of habeas corpus, entered on May 1, 2015. Respondent David Ballard, Warden, Mount Olive Correctional Complex, by counsel Nic Dalton, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

Petitioner was indicted in February of 2009 for first degree murder and conspiracy to commit murder. The victim was Willard Malcolm, who was petitioner's girlfriend's employer and a friend of her family. The matter proceeded to a jury trial in August of 2009. The evidence at petitioner's trial revealed that on October 26, 2008, petitioner and his girlfriend, Patty Lopez were traveling in Ms. Lopez's car to rent a movie when petitioner became enraged and accused Ms. Lopez of having an affair with several men, including the victim. Ms. Lopez turned the car around and returned home. Petitioner lived with Ms. Lopez at the time. Ms. Lopez's children, her mother, and her mother's boyfriend were at the house waiting for petitioner and Ms. Lopez to return with the movie. The argument continued after petitioner and Ms. Lopez returned to the house. While petitioner was in the shower, everyone else left to go to the house of another friend, Jamie Dean.

Shortly thereafter, petitioner went to the Dean residence accompanied by another man. In a rage, petitioner banged on the door and demanded that Ms. Lopez come outside. Ms. Lopez hid while her mother prevented petitioner from entering. Petitioner eventually left. At that point, Ms. Lopez called the victim and asked him to go to her house to retrieve her keys and some clothes

1

for her children. An extended amount of time passed without hearing back from the victim, so Ms. Lopez's mother and her boyfriend went to Ms. Lopez's house to investigate. Just before 10:10 p.m., they found the victim at Ms. Lopez's house, laying face-down, covered in blood, and holding Ms. Lopez's keys. He died the following day of head trauma.

The evidence at petitioner's trial also revealed that, while petitioner was at Ms. Lopez's house on the day of the murder, he telephoned Ms. Lopez's brother several times demanding to know Ms. Lopez's whereabouts. During one of the calls, petitioner told Ms. Lopez's brother that someone was pulling into the driveway, and told the brother, "Did your bitch of a sister send Willard Malcolm to kick me out of the house or come get the keys? . . . That's alright, I will take care of it. . ." It was not long after that call that the victim was found at Ms. Lopez's house.

In addition, in the evening of that same day, petitioner and his brother were at a local Sheetz convenience store when they encountered petitioner's friend, John Boyce. Petitioner, petitioner's brother, and Mr. Boyce went to petitioner's brother's house. Mr. Boyce testified that petitioner asked him if he heard about the murder. According to Mr. Boyce's testimony, petitioner admitted that he committed the murder with steel-toed boots and a baseball bat.[1]

Petitioner was convicted of both charges in the indictment. The circuit court sentenced him to life in prison, with mercy, and an indeterminate prison term of one to five years for conspiracy. The circuit court ordered that the sentences run consecutively. In April of 2010, petitioner appealed to this Court, which appeal was refused by order in September of 2010.

Petitioner filed a pro se petition for a writ of habeas corpus on August 29, 2011. The circuit court appointed counsel to represent petitioner. Thereafter, counsel filed an amended petition, a supplemental petition, and a second supplemental petition. Petitioner raised the following grounds for habeas relief: prejudicial pre-trial publicity; failure of counsel to take an appeal; consecutive sentences for the same transaction; the State's knowing use of perjured testimony; ineffective assistance of trial counsel; excessive or denial of bail; prejudicial statements by the prosecuting attorney; prosecutorial misconduct; errors by the trial court in allowing an incompetent witness to testify; lack of sufficient evidence; more severe sentence than expected; excessive sentence; and irregularities in his arrest. The circuit court held an omnibus hearing on February 18, 2015. By order entered on May 1, 2015, the circuit court addressed and rejected each of petitioner's grounds for habeas relief. Petitioner now appeals to this Court.[2]

---

[1] Petitioner's present appeal centers, in large part, on inconsistencies between Mr. Boyce's statement to the police, his preliminary hearing testimony, and his trial testimony. Mr. Boyce testified at the omnibus hearing in the habeas proceeding and admitted having memory problems. Mr. Boyce's memory problems notwithstanding, the circuit court found that petitioner failed to establish that Mr. Boyce's testimony was false or that the prosecutor knowingly presented false testimony. Mr. Boyce's testimony will be addressed in more detail in our discussion of petitioner's arguments.

[2] Petitioner's appeal to this Court does not raise all of the claims raised in his habeas petition.

## Discussion

We utilize the following standard in our review of the denial of a habeas petition:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

On appeal, petitioner raises three assignments of error. First, he argues that the circuit court erred in finding that John Boyce was competent to testify at trial. Petitioner states that Mr. Boyce gave materially inconsistent statements, gave a factually impossible account of the events, and admitted to suffering from an inability to recall events after about eighteen months. Specifically, in his statement during his interview with the police, Mr. Boyce stated that he ran into petitioner and petitioner's brother at Sheetz around 10:00 p.m. and that they went to petitioner's brother's house. Mr. Boyce told the police that petitioner was talking about the murder and how there were rumors that he (petitioner) committed it. Mr. Boyce claimed to have heard about the murder from his mother earlier in the evening, which is impossible given the apparent time of the victim's death.

Petitioner contends that Mr. Boyce did not implicate petitioner in the murder until the police pressured him by claiming to have evidence that Mr. Boyce was involved. Petitioner argues that, once pressured, Mr. Boyce stated that petitioner talked about beating the victim with a bat and that his brother kicked him with steel-toed boots. Additionally, Mr. Boyce stated that there were five to eight people in the brother's house when petitioner was talking about the murder.

In petitioner's preliminary hearing, Mr. Boyce testified that petitioner talked about the murder while they were still at Sheetz, as opposed to while they were at the brother's house as he stated in his police statement. Also, in his preliminary hearing testimony, Mr. Boyce did not implicate petitioner's brother in the killing, unlike in his statement to the police.

At trial, Mr. Boyce testified more consistently with his statement to the police, that is, that petitioner admitted that he used a bat and his brother used the boots to kill the victim. Mr. Boyce testified during cross-examination that he heard about the murder from his mother before meeting petitioner at Sheetz. Petitioner states the prosecutor had to resort to asking Mr. Boyce narrow, leading questions in his testimony, and had to provide the details for Mr. Boyce because he could not recall them.

In the omnibus hearing, Mr. Boyce testified that he has a learning disability and cannot remember details. He testified that the first person to tell him about the murder was his mother, and this was between 7:00 and 9:00 p.m. on the evening of the murder, prior to seeing petitioner at Sheetz. On re-direct examination, Mr. Boyce testified that it was possible that he misconstrued

the conversation with petitioner on the night of the murder and that it was possible that petitioner was talking about the rumors going around town, rather than petitioner admitting to the killing.

Petitioner urges this Court to reverse his convictions on the basis that Mr. Boyce is a weak and feeble minded person with severe memory and comprehension problems, and thus, should have been declared incompetent to testify. This Court has held that "[t]he question of the competency of a witness to testify is left largely to the discretion of the trial court and its judgment will not be disturbed unless shown to have been plainly abused resulting in manifest error." Syl. Pt. 2, *State v. Merritt*, 183 W.Va. 601, 396 S.E.2d 871 (1990) (citations omitted). Rule 601 of the West Virginia Rules of Evidence provides that "[e]very person is competent to be a witness except as otherwise provided for by these rules." However, in *Merritt,* we recognized that the Fourth Circuit Court of Appeals

> has consistently suggested that every witness is presumed to be competent, and neither feeblemindedness nor insanity renders a witness incompetent or disqualified. The only grounds for disqualifying a party as a witness are that the witness does not have knowledge of the matters about which he is to testify, that he does not have the capacity to recall, or that he does not understand the duty to testify truthfully. F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 2.2(B) (2d ed. 1986) (citing *United States v. Odom,* 736 F.2d 104 (4th Cir.1984)).

183 W.Va. at 608, 396 S.E.2d at 878.

In the present case, we initially note that there was no motion or challenge by petitioner to Mr. Boyce's competence as a witness. Accordingly, the trial court was never presented with the issue. We have held that "'[o]ne of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue." *State v. Miller*, 194 W.Va. 3, 17, 459 S.E.2d 114, 128 (1995) (citations omitted).

However, even if we examine Mr. Boyce's testimony in light of our statements in *Merritt*, we find no reason to conclude that he was incompetent to testify. First, his testimony, while inconsistent at times, did not evidence a lack of knowledge about the subject matter upon which he was called to testify at trial, that is, meeting petitioner on the night of the murder and recounting petitioner's admission to the crime. The police corroborated Mr. Boyce's testimony that he met petitioner at Sheetz by viewing the surveillance video from the store on the night in question. Also, there was corroborating testimony that after meeting at Sheetz, the men left together and went to another location.

Second, Mr. Boyce had the capacity to recall the events of that evening. He testified that petitioner asked him if he had heard about the murder, and then petitioner confessed to it. The fact that there are variations in Mr. Boyce's recollection of the events does not go to his competence; rather, it goes to his credibility. On this point, we have held that "[t]he fact that the testimony of a witness is inconsistent does not render him incompetent as a witness; rather, such

4

inconsistency goes to his credibility." *State v. Butcher*, 165 W. Va. 522, 526, 270 S.E.2d 156, 159 (1980) (citation omitted).

Lastly, petitioner cannot establish the third ground set forth in *Merritt* because there is no evidence to indicate that Mr. Boyce failed to understand his duty to testify truthfully. Mr. Boyce properly took the oath to tell the truth prior to testifying and gave no reason for the trial court to question his understanding of it. Upon our review, petitioner has not demonstrated any error with respect to Mr. Boyce's competency to testify. Accordingly, we reject petitioner's first assignment of error.

In his second assignment of error, petitioner argues that the prosecutor interjected personal opinion regarding the credibility of the evidence and witnesses, made inflammatory remarks during closing argument, and presented false and hearsay testimony. Upon our review, we find no error. Specifically, petitioner takes issue with the fact that the prosecutor told the jury that the most important evidence came from two physician witnesses and Mr. Boyce. Additionally, petitioner claims the following statement from the prosecutor in rebuttal closing argument was improper: "I've dealt with murder cases, ladies and gentlemen, where there wasn't even a body."

As for the prosecutor's alleged introduction of false testimony, petitioner argues that the prosecutor was aware of the inconsistencies in Mr. Boyce's statement to the police as compared to his testimony at the preliminary hearing. Petitioner argues that, as a result, the prosecutor knew Mr. Boyce's testimony was false. With respect to his claim that the prosecutor introduced improper hearsay, petitioner refers to the trial testimony of Ralph Bandy. Petitioner states that Mr. Bandy testified to telling the police about hearing rumors about the killing. However, before Mr. Bandy could identify petitioner as one of the people who was rumored to have been involved, defense counsel objected and the court sustained the objection. Petitioner claims this line of questioning by the prosecutor was improper because Mr. Bandy had no knowledge of events in question and was called to testify in order to inflame the jury.

Upon our review, we reject petitioner's argument that the prosecutor's above-referenced conduct warrants reversal of his convictions. These alleged errors are not proper for a habeas proceeding as they do not rise to the level of a constitutional violation. *See* Syl. Pt. 4, *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979) ("A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed.").

As for the prosecutor's presentation of Mr. Boyce's testimony, we have already rejected petitioner's contention that the witness was incompetent. Now, however, petitioner claims that the testimony was false and known by the prosecutor to be false. To succeed on this claim, petitioner "must demonstrate that (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known the testimony was false, and (3) the false testimony had a material effect on the jury verdict." Syl. Pt. 2, in part, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009). The main inconsistency in Mr. Boyce's testimony is that in the preliminary hearing, Mr. Boyce testified that petitioner did not implicate his brother when he admitted to the murder when they discussed it after meeting at Sheetz; but at trial, Mr. Boyce

5

testified that petitioner did implicate his brother when he admitted to the murder. While the prosecutor may have been aware of inconsistencies in Mr. Boyce's version of the events by viewing his statement to the police compared to his preliminary hearing testimony, there is no reason to conclude that the prosecutor knowingly introduced false testimony. Inconsistency in Mr. Boyce's testimony does not render his testimony false; rather, it provided fodder for the defense to argue at trial that he was not credible. Regardless, in either of Mr. Boyce's versions of petitioner's admission – that he committed the murder with or without the brother's involvement – the jury consistently heard from Mr. Boyce that petitioner admitted to be being involved. Accordingly, petitioner cannot establish any of the elements set forth in *McBride*.

As for the testimony of Ralph Bandy, the transcript reveals that the prosecutor hoped to elicit testimony from him as to whether he was with petitioner and his brother on the night of the murder and whether he heard either of them talk about the murder. However, when Mr. Bandy answered that he had mostly heard only rumors, petitioner's trial counsel objected and the objection was sustained. Therefore, we find no error.

Petitioner's final assignment of error is that his trial counsel was ineffective for (1) failing to object to the competency of John Boyce and (2) failing to object to the prosecutor's prejudicial comments. This Court has held as follows:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pts. 5 and 6, *Miller*, 194 W.Va. 3, 459 S.E.2d 114.

Petitioner sets forth the applicable law, but provides no argument or analysis in support of his ineffective assistance claims, other than conclusory statements that echo his prior assignments of error, which we have rejected. "The Court may disregard errors that are not adequately supported by specific references to the record on appeal." W.Va. R. App. P. 10(c)(7), in part. Thus, we reject his claim that he was denied effective assistance of counsel.

For the foregoing reasons, we affirm the circuit court's order denying petitioner habeas relief.

Affirmed.

**ISSUED:  May 20, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II