# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**February 22, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Larry C.,**
**Petitioner Below, Petitioner**

**vs)   No. 16-0946** (Fayette County 16-C-139)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Larry C.,[1] pro se, appeals the September 14, 2016, order of the Circuit Court of Fayette County denying his petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex,[2] by counsel Shannon Frederick Kiser, filed a summary response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In his underlying criminal case, petitioner was indicted on May 8, 2007, on sixteen counts of sexual assault in the second degree, in violation of West Virginia Code § 61-8B-4; thirty-two

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Since the filing of the appeal in this case, the superintendent at Mount Olive Correctional Complex has changed and the superintendent is now Donnie Ames. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure. Additionally, effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W.Va. Code § 15A-5-3.

counts of sexual abuse in the first degree, in violation of West Virginia Code § 61-8B-7(a)(1); thirty-two counts of sexual abuse by a parent, guardian, or custodian, in violation of West Virginia Code § 61-8D-5; and sixteen counts of sexual assault in the first degree, in violation of West Virginia Code § 61-8B-3. The crimes occurred between September of 2005 and December of 2006. Petitioner's victims, A.C.H. and A.S.H., were the minor granddaughters of the woman with whom petitioner had lived for many years. The children, who—at the time of petitioner's crimes—were approximately thirteen and ten years old, frequently visited with petitioner and their grandmother, often spent the night at the couple's home, and referred to petitioner as their "grandfather."

Petitioner's jury trial commenced on January 28, 2008. Both child victims testified. A.C.H. was then sixteen years old and A.S.H. was thirteen years old. Each child testified that, when their grandmother was asleep or on the computer in another room, petitioner would grab her breasts or place his hand down her pants and rub her vagina. Each girl also testified that petitioner had, on a few occasions, inserted his finger or the tip of his finger into her vagina. The State also presented the testimony of a counselor, who had treated the children. To counter this evidence, petitioner presented the testimony of a qualified clinical psychologist, who testified that the victims' stories were identical and seemed rehearsed.

With regard to petitioner's status as the children's custodian, the State presented evidence that: (1) petitioner cohabited for years with the children's grandmother; (2) petitioner had an ongoing relationship with the children; (3) the children were frequently in petitioner's home and in his presence while their grandmother was asleep or occupied elsewhere; (4) the children's father expected petitioner to watch over the children when they were in petitioner's home; (5) the children's mother expected petitioner to keep the children safe while they were with him; and (6) petitioner ensured that the children were fed while they were with him. At the close of evidence, the circuit court instructed the jury on the legal definition of "custodian" set forth in West Virginia Code § 61-8D-1(4).[3] Thereafter, the jury determined that petitioner served as the child victims' custodian and found petitioner guilty on all ninety-six counts of the indictment.

On February 8, 2008, petitioner filed a motion for a new trial in which he argued that the circuit court improperly excluded the defense from playing for the jury the recordings of the

---

[3] West Virginia Code § 61-8D-1(4) defines a "custodian" as

> a person over the age of fourteen years who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding. "Custodian" shall also include, but not be limited to, the spouse of a parent, guardian or custodian, or a person cohabiting with a parent, guardian or custodian in the relationship of husband and wife, where such spouse or other person shares actual physical possession or care and custody of a child with the parent, guardian or custodian.

2

victims' forensic interviews. The circuit court found that it was not necessary to admit the recordings to impeach the victims' testimony because their trial testimony was not contradictory to their recorded testimony. On March 20, 2008, the circuit court sentenced petitioner to an aggregate term of fifty-one to 175 years of incarceration. Petitioner sought review of his convictions and sentence in this Court, which refused his appeal on September 9, 2009.

Petitioner filed a petition for a writ of habeas corpus on March 9, 2010. The circuit court appointed an attorney for petitioner and held evidentiary hearings on November 15, 2012, and June 24, 2013. At the November 15, 2012, hearing, the circuit court questioned petitioner regarding his *Losh* checklist to ensure that he was aware that any issue not initialed would be deemed waived:[4]

> THE COURT: All right. I'm going over the list to see the grounds, the possible grounds, that you are raising, that you have initialed . . . .
>
> [At that point, the circuit court identified, one by one, each ground that [p]etitioner had initialed, and [p]etitioner confirmed, one by one, that he had selected each ground.]
>
> ****
>
> THE COURT: All right. Now, you do realize, by not checking all the others, . . . and as I say, there's 53 grounds listed. Do you understand that, by not putting your initial[s] out from the other ground, that you are waiving or giving up your right to contest those areas in the future?
>
> THE PETITIONER: Yes, I do, Your Honor.
>
> THE COURT: And[,] have you gone over completely this list with [petitioner's habeas attorney].
>
> THE PETITIONER: Yes, Your Honor.
>
> THE COURT: Okay. And[,] do you have any question about this list?
>
> THE PETITIONER: No, sir.

At that point, the circuit court returned the *Losh* checklist to petitioner so that he could sign each page. Thereafter, the circuit court admitted petitioner's *Losh* checklist into evidence and proceeded to hear the testimony of his trial attorney. By order entered September 27, 2013, the

---

[4]In *Losh v. McKenzie*, 166 W.Va. 762, 768-70, 277 S.E.2d 606, 611-12 (1981), we compiled a non-exclusive list of potential grounds that a circuit court should address with a habeas petitioner as to whether each ground was being either waived or raised in the proceeding.

circuit court noted that it questioned petitioner at length regarding the grounds that he wanted to raise and confirmed petitioner's understanding that he was waiving any grounds that he did not initial on his *Losh* checklist. The circuit court thereafter rejected petitioner's grounds for relief, including the ineffective assistance of counsel claim, and denied the habeas petition. However, the circuit court accepted a joint stipulation by the parties and resentenced petitioner on thirteen counts of first-degree sexual assault to reflect the sentence in effect at the time that those offenses were committed.

On November 25, 2013, petitioner appealed the circuit court's September 27, 2013, order to this Court, raising various assignments of error alleging that his trial attorney provided ineffective assistance. In *[Larry C.] v. Ballard*, No. 13-1173, 2014 WL 5545717, at *6 (W.Va. November 3, 2014) (memorandum decision),[5] this Court rejected certain of petitioner's arguments and declined to address others, finding that "[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim." (Internal quotations and citations omitted.) Accordingly, this Court affirmed the denial of habeas relief. *Id.*

On May 16, 2016, petitioner filed a second habeas petition, alleging that his attorney in the first habeas proceeding provided ineffective assistance both in the circuit court and on appeal to this Court. With his petition, petitioner also filed a motion seeking leave to file additional grounds in the future, "if need be." However, by order entered September 14, 2016, the circuit court found that petitioner was "apparently confused" regarding the nature of a habeas proceeding, explaining that, while the purpose of such a proceeding is "to determine whether constitutional errors have occurred," petitioner was attempting to "re-try" the underlying criminal case. Specifically, the circuit court found that petitioner's argument that he did not serve as the child victims' custodian was nothing more than attempting "one more bite at the apple" regarding a previously adjudicated issue.

The circuit court further found that, based on petitioner's pattern of behavior during his initial habeas proceeding, "short of an attorney being successful in getting [p]etitioner's conviction[s] set aside, it is highly unlikely that [petitioner] would consider any counsel's performance constitutionally acceptable." In other words, petitioner's habeas attorney was placed into the difficult position of "attempting a middle of the road approach to ensure that those claims that were viable were asserted . . ., while at the same time attempting to comply with the desires and requests of [petitioner] by presenting those *pro se* arguments and claims presented independently by [petitioner]."

The circuit court found that every claim except for ineffective assistance of habeas counsel was either waived or fully adjudicated in the initial habeas proceeding. The circuit court determined that it could address petitioner's various claims that his habeas attorney was ineffective without a hearing and appointment of counsel. The circuit court ultimately found that habeas counsel did not perform deficiently and that, if there was any deficient performance in a certain area of the representation, it did not change the outcome of the prior proceeding. With specific

---

[5]We take judicial notice of the record in *[Larry C.]*.

4

regard to the alleged inadequacy of petitioner's appeal in *[Larry C.]*, the circuit court found that, given the entry of a comprehensive order in the prior proceeding that "thoroughly addressed all of [p]etitioner's claims consistent with the record, evidence presented, and relevant law, . . . regardless of what appellate argument was made . . ., none of the claims raised on appeal would have warranted relief." Accordingly, the circuit court denied habeas relief in the instant proceeding.

On October 6, 2016, petitioner appealed the circuit court's September 14, 2016, order denying habeas relief and, on November 22, 2016, and April 28, 2017, filed motions for appointment of appellate counsel. By amended scheduling orders entered January 4, 2017, and May 23, 2017, this Court ruled that each of those motions will be considered with the merits.

We apply the following standard of review in habeas appeals:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, of *Anstey v. Ballard*, 237 W.Va. 411, 787 S.E.2d 864 (2016). In syllabus point three of *Anstey*, we held:

> "'A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief. Syllabus Point 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973).' Syl. Pt. 2, *White v. Haines*, 215 W.Va. 698, 601 S.E.2d 18 (2004)."

237 W.Va. at 412, 787 S.E.2d at 866.

On appeal, petitioner argues that the circuit court denied the instant habeas petition before petitioner could factually develop his claims through an evidentiary hearing and the appointment of counsel. Respondent counters that the circuit court properly denied the petition. We agree with respondent.

We concur with the circuit court's finding that petitioner may not use a habeas proceeding to retry the underlying criminal case. As we held in syllabus point four of *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 254 S.E.2d 805 (1979), *cert. denied*, 464 U.S. 831 (1983), "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." *See also White*, 215 W.Va. at 705 n.9, 601 S.E.2d at 25 n.9 (2004) (affirming the denial of habeas relief, finding that it "is difficult to muster any sound reasoning for giving the [petitioner] another bite at the apple").

In *White*, a habeas petitioner argued that he was entitled to a second such proceeding to determine whether he was mentally competent when he entered his guilty pleas to multiple counts forgery and uttering. 215 W.Va. at 702, 601 S.E.2d at 22. We disagreed and affirmed the denial of the petitioner's second habeas petition, finding that the procedure used to adjudicate the mental competency issue in the underlying criminal case was consistent with constitutional principles of due process. *Id.* at 705, 601 S.E.2d at 25. As we found in *Losh v. McKenzie*, 166 W.Va. 762, 764, 277 S.E.2d 606, 609 (1981), the purpose of the West Virginia post-conviction habeas corpus statute, West Virginia Code §§ 53-4A-1 through 53-4A-11, is to afford a criminal defendant an opportunity to "raise any collateral issues [that] have not . . . been fully and fairly litigated" in a prior proceeding.

Here, except for the ineffective assistance of habeas counsel claim, the circuit court found that every issue that could be properly raised in a habeas proceeding was either waived or fully adjudicated in petitioner's first such proceeding. Based on our review of the record in this case, we concur with this finding. We find that the doctrine of res judicata applies to this case pursuant to syllabus points one and two of *Losh*:

> 1.     An omnibus habeas corpus hearing as contemplated in [the West Virginia post-conviction habeas corpus statute] occurs when: (1) an applicant for habeas corpus is represented by counsel or appears *pro se* having knowingly and intelligently waived his right to counsel; (2) the trial court inquires into all the standard grounds for habeas corpus relief; (3) a knowing and intelligent waiver of those grounds not asserted is made by the applicant upon advice of counsel unless he knowingly and intelligently waived his right to counsel; and, (4) the trial court drafts a comprehensive order including the findings on the merits of the issues addressed and a notation that the defendant was advised concerning his obligation to raise all grounds for post-conviction relief in one proceeding.

> 2.     A judgment denying relief in post-conviction habeas corpus is *res judicata* on questions of fact or law which have been fully and finally litigated and decided, and as to issues which with reasonable diligence should have been known but were not raised, and this occurs where there has been an omnibus habeas corpus hearing at which the applicant for habeas corpus was represented by counsel or appeared pro se having knowingly and intelligently waived his right to counsel.

*Id.* at 762, 277 S.E.2d at 607-08.

Pursuant to syllabus point 4 of *Losh*,[6] ineffective assistance of habeas counsel constitutes

---

[6]In syllabus point four of *Losh*, we held:

> A prior omnibus habeas corpus hearing is *res judicata* as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant

(Continued . . .)

an exception to the doctrine of res judicata.[7] We set forth the standards for determining ineffective assistance of counsel in syllabus points five and six of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995):

> 5.    In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

> 6.    In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Here, the circuit court found that petitioner's habeas attorney did not perform deficiently, but if there was deficient performance in a certain area of the representation, it did not change the outcome of the prior proceeding. We concur with this finding. First, though petitioner's convictions were not vacated, his habeas attorney entered into a joint stipulation that allowed petitioner to be resentenced on thirteen counts of first-degree sexual assault to reflect the sentence in effect at the time that those offenses were committed. Habeas counsel also represented petitioner at two evidentiary hearings, discussed the *Losh* checklist with him, and filed an appeal on petitioner's behalf in *[Larry C.]*. Though petitioner questions the adequacy of his habeas attorney's arguments on appeal, we agree with the circuit court's finding that, given the entry of a comprehensive order in the prior proceeding that "thoroughly addressed all of [p]etitioner's claims consistent with the record, evidence presented, and relevant law, . . . regardless of what appellate

---

> may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing[.]

*Id.* at 762-63, 277 S.E.2d at 608.

[7]In his reply brief, petitioner argues that, because he alleges that his habeas attorney was ineffective, he is permitted to re-raise all his issues under the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012). We find that petitioner's reliance on *Martinez* is misplaced because the Supreme Court did not address any constitutional issue that would affect this state proceeding. *See id.* at 9. Rather, the Supreme Court in *Martinez* addressed whether a *procedural* rule, known as the doctrine of procedural default, barred a state prisoner from asserting the claim of ineffective assistance of trial counsel in a *federal* habeas proceeding after his habeas attorney failed to raise it in the earlier state proceeding. *Id.* at 4-5.

argument was made . . ., none of the claims raised on appeal would have warranted relief." Therefore, based on our review of the record, we find that habeas counsel's performance was not outside the broad range of professionally competent assistance that is sufficient under the *Strickland/Miller* standard.

Second, though petitioner continues to attack the evidence against him, both victims testified at trial regarding the sexual acts that petitioner committed on them and ample evidence existed to support the jury's determination that petitioner served as the victims' custodian. Therefore, we further find that the outcome of the prior proceeding would have been the same notwithstanding any alleged deficiency in habeas counsel's performance. Accordingly, we conclude that the circuit court did not abuse its discretion in denying the instant habeas petition. Because we find that the circuit court's denial of habeas relief should be affirmed, we deny petitioner's motions for appointment of appellate counsel.

For the foregoing reasons, we affirm the circuit court's September 14, 2016, order denying petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED**:   February 22, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison